## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 15, 2009**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No.** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | **Charges:** |
| | : | |
| **SHELLY S. SINGHAL,** | : | **18 U.S.C. § 371 (Conspiracy)** |
| **LORETTA FREDY BUSH, and** | : | |
| **DENNIS L. PELINO,** | : | **18 U.S.C. § 1341 (Mail Fraud)** |
| | : | |
| **Defendants.** | : | **18 U.S.C. § 1001 (False Statement)** |
| | : | |
| | : | **18 U.S.C. § 2 (Aiding and Abetting** |
| | : | **and Causing an Act to be Done)** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(C) and 28** |
| | : | **U.S.C. § 2461(c) (Criminal Forfeiture)** |

### INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At various times relevant to this Indictment:

### Persons, Entities and Methods

1.     Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH, DENNIS L. PELINO and others, both known and unknown to the Grand Jury, engaged in a conspiracy and a scheme to defraud the United States Securities and Exchange Commission ("SEC"), investors and others and to enrich themselves through a series of undisclosed and disguised related party transactions and insider trading that generated proceeds exceeding $50 million.

2.      Xinhua Finance Limited and its wholly-owned affiliate, Xinhua Financial Network Limited (collectively, "Xinhua Finance"), were businesses that provided financial information products focused on China's financial markets and integrated providers of market indices, ratings, financial news and analysis and investor relations for China.  Xinhua Finance was organized under the laws of the Cayman Islands and headquartered in Shanghai, China. According to one of Xinhua Finance's public filings with the SEC, Xinhua Finance "was founded in anticipation of the growing need for transparent and reliable financial information and data flow into and out of China."

3.      Beginning in or around 2003, Xinhua Finance raised funds from United States investors.  Xinhua Finance did not register these offerings with the SEC.  Instead, Xinhua Finance relied on United States securities laws' limited offering exemptions to registration. Xinhua Finance filed notices with the SEC to qualify for the registration exemptions.  On or about October 28, 2004, Xinhua Finance's shares began to trade publicly on the Tokyo Stock Exchange's Mothers Board (market of the high-growth and emerging stocks).  Xinhua Finance was the first Chinese Initial Public Offering in Japan, the first non-Japanese equity to list on the Mothers Board, and the first time a foreign stock traded in Japan through an international settlement agreement, which allowed investors globally to invest in Xinhua Finance.  Beginning in or around April 2005, Xinhua Finance began furnishing the SEC with information to establish an exemption from registration for the offer and sale of securities in the United States.  In or around July 2005, Xinhua Finance established a sponsored Level 1 American Depository Receipt ("ADR") facility.  Xinhua Finance's ADRs traded on the United States over-the-counter market using the stock trading symbol "XHFNY."

2

4.      Defendant SHELLY S. SINGHAL resided in Newport Beach, California.  He served as an independent member on Xinhua Finance's Board of Directors from on or about July 27, 2004 to on or about May 18, 2007.  He was the Chairman of Xinhua Finance's Audit Committee and a member of its Compensation Committee and Investment Committee.

5.      Defendant LORETTA FREDY BUSH resided in Shanghai, China.  In or around November 1999, she co-founded Xinhua Finance with defendant DENNIS L. PELINO.  She was Xinhua Finance's Chief Executive Officer ("CEO") and Vice Chairman of Xinhua Finance's Board of Directors until on or about January 23, 2009.

6.      Defendant DENNIS L. PELINO resided in Miami Beach, Florida.  In or around November 1999, he co-founded Xinhua Finance with defendant LORETTA FREDY BUSH.  He served as an independent member on Xinhua Finance's Board of Directors until on or about April 2, 2008.  He was the Chairman of Xinhua Finance's Compensation Committee and a member of its Audit Committee and Investment Committee.

7.      SBI USA, LLC ("SBI USA") was a California limited liability company with its offices located in Newport Beach, California.  SBI USA was an investment company engaged in the business of providing investment advisory services as well as buying and selling securities that were traded primarily in the over-the-counter markets.  Defendant SHELLY S. SINGHAL, a registered representative associated with a broker-dealer, was the owner and Chairman of SBI USA.  SBI USA provided investment advisory services to Xinhua Finance.

8.      Robert S. Brown resided in New Rochelle, New York.  He beneficially owned and controlled nominee entities for, among other purposes, the receipt of funds from Xinhua Finance, the receipt and sale of Xinhua Finance shares, and the disbursement of proceeds to

defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH, DENNIS L. PELINO and others.

9.      Businessperson B-2 was an employee of SBI USA who resided in Rolling Hills Estates, California.

10.     Nominee B resided in Newburg, Oregon.  Nominee B was the nominee manager of a nominee entity for, among other purposes, the receipt and sale of Xinhua Finance shares.

11.     Nominee C resided in Pasadena, California.  Nominee C beneficially owned and controlled a nominee entity for, among other purposes, the receipt and sale of Xinhua Finance shares and the disbursement of proceeds to defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH, DENNIS L. PELINO and others.

12.     Nominee F resided in Cos Cob, Connecticut.  Nominee F was the nominee manager of a nominee entity for, among other purposes, the receipt of assets from Xinhua Finance and the receipt and sale of Xinhua Finance shares.

13.     SBI Advisors LLC ("SBI Advisors") was a Delaware limited liability company formed on or about December 3, 2003, with offices in Newport Beach, California.  As of on or about January 1, 2005, the owners of SBI Advisors were SBI USA and defendant SHELLY S. SINGHAL.

14.     SBI Brightline III LLC ("SBI Brightline III")  was a Delaware limited liability corporation formed on or about November 25, 2003.  On or about January 5, 2004, SBI Brightline III changed its name to SBI Brightline Capital LLC ("SBI Brightline Capital").  On or about April 20, 2004, SBI Brightline Capital changed its name to Entree Capital LLC ("Entree Capital").  Defendant SHELLY S. SINGHAL controlled Entree Capital.

15.     Bedford Proprietary Trading, LLC ("Bedford") was a Delaware limited liability company formed on or about September 7, 2004.  The sole member of Bedford was Nominee C. Defendant SHELLY S. SINGHAL controlled Bedford.

16.     Bedrock Securities LLC ("Bedrock") was a registered broker-dealer controlled by defendant SHELLY S. SINGHAL.

17.     Company G was located in or around Ra'anana, Israel.

18.     Company H was a Cayman Island Corporation located in New York, New York.

19.     Hyperion Investments Limited ("Hyperion") was a Bahamian corporation. Nominee F was the purported manager of Hyperion.  Defendant SHELLY S. SINGHAL controlled Hyperion.

20.     Wire Mill Partners II LLC ("Wire Mill Partners II") was a Delaware limited liability company formed on or about April 5, 2004.  The initial member of Wire Mill Partners II was a close family relative of Robert S. Brown.  Robert S. Brown and, later, defendant SHELLY S. SINGHAL controlled Wire Mill Partners II.

21.     Wiremill LLC ("Wiremill") was a Delaware limited liability company formed on or about January 23, 2006.  SHELLY S. SINGHAL controlled Wiremill.

22.     Tamarack Partners LLC ("Tamarack Partners") was a Delaware limited liability company formed on or about December 14, 2006.  The sole owner of Tamarack Partners was Businessperson B-2.  SHELLY S. SINGHAL controlled Tamarack Partners.

23.     The SEC, with its headquarters in the District of Columbia, is an independent agency of the United States government responsible for enforcing the federal securities laws, which are designed to provide the investing public with full disclosure of all material facts

regarding matters involving the offer, purchase, and sale of securities, among other things. These laws protect the investing public in the purchase of stock that is publicly distributed by maintaining fair and honest securities markets and eliminating manipulative practices that tend to distort the fair and just price of stock.

24.     To sell ADRs on the United States over-the-counter market, Xinhua Finance was required, pursuant to the exemption from registration upon which it relied, to furnish to the SEC the information: (a) Xinhua Finance made or was required to make public pursuant to the laws of Japan or the Cayman Islands; (b) Xinhua Finance filed or was required to file with and which was made public by the Tokyo Stock Exchange; or (c) Xinhua Finance distributed or was required to distribute to the holders of its securities.  As members of Xinhua Finance's Board of Directors, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO had an opportunity to review certain of the filings made public by the Tokyo Stock Exchange and distributed to the holders of Xinhua Finance's securities.

**The Entree Capital Transaction**

25.     In or around January 2004, defendants SHELLY S. SINGHAL and DENNIS L. PELINO, through false representations and deceptive practices, induced the owner of Company H to sell a warrant to purchase preferred Xinhua Finance shares.

26.     On or about January 6, 2004, Xinhua Finance sent a demand letter informing Company H that it was in default of the warrant.  Xinhua Finance demanded payment of $3,000,000 from Company H before February 6, 2004.

27.     On or about January 6, 2004, defendant LORETTA FREDY BUSH called the owner of Company H to inform him that Xinhua Finance had issued a demand letter to Company H.

28.     Within days of defendant LORETTA FREDY BUSH's January 6, 2004 call, defendant DENNIS L. PELINO called the owner of Company H to inform him that defendant SHELLY S. SINGHAL had an investor who would buy the warrant from Company H.

29.     On or about January 20, 2004, defendants SHELLY S. SINGHAL and DENNIS L. PELINO used Nominee B and a fictitious entity, Brightline Capital LLC, to buy the warrant from Company H.  After buying the warrant, SINGHAL S. SHELLY used Nominee B and Robert S. Brown to exercise the warrant and to acquire approximately 6,944 restricted Xinhua Finance shares, which were deposited into a brokerage account in the name of Entree Capital.

30.     Defendant SHELLY S. SINGHAL controlled and used Entree Capital as a nominee to disguise the interest and involvement of SHELLY S. SINGHAL and defendant DENNIS L. PELINO in the activities of Entree Capital for purposes of, among other things, avoiding the obligation of Xinhua Finance to disclose publicly a related party transaction and engaging in undisclosed insider trading.

31.     On or about March 25, 2005, defendant LORETTA FREDY BUSH, in her capacity as CEO of Xinhua Finance, authorized an acceleration of the "lock-up" period for the Xinhua Finance shares held by Entree Capital, that is, the date that Entree Capital could first sell its Xinhua Finance shares.  The authorization allowed Entree Capital to begin selling its Xinhua Finance shares approximately four weeks before the lock-up period for similarly restricted shares expired and, thus, ahead of similarly situated investors.

32.     On or about March 28, 2005, defendant SHELLY S. SINGHAL paid a portion of the exercise price for the warrant held by Entree Capital by transferring $388,888 from a bank account in the name of SBI USA and $1,000,000 from a bank account in the name of SHELLY S. SINGHAL to Xinhua Finance.

33.     At defendant SHELLY S. SINGHAL's direction, Entree Capital obtained additional monies to exercise the warrant held by Entree Capital by engaging in transactions with Xinhua Finance in which a company controlled by SHELLY S. SINGHAL, Wire Mill Partners II, entered into agreements with Xinhua Finance to receive compensation in exchange for purportedly providing consulting services to Xinhua Finance.  At SHELLY S. SINGHAL's direction, on or about April 1, 2005, Wire Mill Partners II authorized Xinhua Finance to credit to Entree Capital $3,611,111 that Xinhua Finance purportedly owed to Wire Mill Partners II.

34.     From on or about April 7, 2005 through on or about April 22, 2005, at a time when investors similarly situated to Entree Capital were prohibited from selling their restricted Xinhua Finance shares due to the lock-up period, Entree Capital, at defendant SHELLY S. SINGHAL's direction, sold approximately 4,750 of the 6,944 Xinhua Finance shares held by Entree Capital for proceeds of approximately $16,600,000.  From on or about April 26, 2005 through on or about December 9, 2005, at SHELLY S. SINGHAL'S direction, Entree Capital sold the remainder of the Xinhua Finance shares held by Entree Capital, resulting in total proceeds for all of the 6,944 Xinhua Finance shares of approximately $21,700,000.

35.     From on or about April 11, 2005 through on or about February 24, 2006, at defendant SHELLY S. SINGHAL's direction, Entree Capital distributed the proceeds from the sale of the 6,944 Xinhua Finance shares held by Entree Capital for the principal benefit of

8

defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO in the

following approximate amounts:

| SHELLY S. SINGHAL/SBI USA | $10,100,000 |
| LORETTA FREDY BUSH | $2,300,000 |
| DENNIS L. PELINO | $5,800,000 |

36.     As a result of the Entree Capital transaction, defendants SHELLY S. SINGHAL,

LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish

statements to the SEC that misrepresented and failed to disclose: (a) a related party transaction

between Xinhua Finance, its CEO (LORETTA FREDY BUSH), and members of its Board of

Directors (SHELLY S. SINGHAL and DENNIS L. PELINO) concerning the acquisition,

acceleration of the lock-up period and exercise of the Xinhua Finance shares held by Entree

Capital; (b) SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO had

an ownership interest in the Xinhua Finance shares held by Entree Capital; and (c) SHELLY S.

SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO sold Xinhua Finance shares

through Entree Capital for their personal benefit.

**The Bedrock Securities and Bedford Transactions**

37.     In or around July 2005, Xinhua Finance distributed an insider trading policy to

the directors and senior officers of Xinhua Finance and its subsidiaries, which the policy defined

as "Insiders."  The policy provided that Insiders may not buy or sell Xinhua Finance securities

without first obtaining confirmation from Xinhua Finance's Compliance Officer that there was

no blackout in effect.  The policy stated that approval to sell Xinhua Finance's shares generally

would not be given for the purchase and sale by Insiders (a) "during the period commencing on

the day that is four weeks after the close of a fiscal quarter and ending at the close of business on the first business day following the release of quarterly results," (b) "following the dissemination of material information on the status of the Company or any of its subsidiaries and current results, until sufficient time has elapsed to allow for the information to have been received (generally, sufficient time will have elapsed by the close of business on the first business day following the release of the information)," or (c) "whenever the Chief Executive Officer, Chief Financial Officer or General Counsel of the Company has determined there should be an insider trading blackout and until the blackout is terminated."  The policy also provided the following: "Under Japanese securities laws, members of the Board of Directors of the Company are required to report to the Tokyo Stock Exchange on any trades in shares of the Company from time to time.  These reports must be accurately filed by the fifteenth calendar day in the month following the trade."

38.    In or around July 2005, Xinhua Finance distributed an insider trading and confidentiality policy to all Xinhua Finance employees.  The insider trading and confidentiality policy prohibited Xinhua Finance's employees from trading on undisclosed material information, which the policy defined as "any information relating to the business and affairs of Xinhua Finance that could be reasonably expected to result in a significant change in the market price or value of Company Securities, or information that would have a substantial likelihood of influencing a reasonable investor's investment decision."  The policy also prohibited Xinhua Finance's employees from trading Xinhua Finance securities during blackout periods, stating "each blackout period commences four weeks after the end of a fiscal quarter and ends one full TSE [Tokyo Stock Exchange] trading day following the public release of the quarterly results."

10

39.     On or about January 6, 2006, defendant LORETTA FREDY BUSH transferred 22,500 Xinhua Finance shares beneficially owned by her to a brokerage account under the control of Bedrock Securities.  From on or about January 13, 2006 through on or about February 17, 2006, at the direction of defendants SHELLY S. SINGHAL and LORETTA FREDY BUSH, Bedrock Securities sold the 22,500 Xinhua Finance shares for proceeds of approximately $15,300,000.  On or about February 23, 2006, at SHELLY S. SINGHAL's direction, SBI USA wired $1,000,000 to an account in China for the benefit of LORETTA FREDY BUSH as an advance on the proceeds from the sale of her Xinhua Finance shares.  On or about February 28, 2006, at SHELLY S. SINGHAL's direction, Bedrock Securities wired an additional $13,712,614.17 to an account in China for the benefit of LORETTA FREDY BUSH from the proceeds of the sale of her Xinhua Finance shares.

40.     On or about February 7, 2006, defendant LORETTA FREDY BUSH transferred 4,236 Xinhua Finance shares beneficially owned by her to a brokerage account under the control of Bedrock Securities.  From on or about February 17, 2006 through on or about February 23, 2006, at the direction of defendants SHELLY S. SINGHAL and LORETTA FREDY BUSH, Bedrock Securities sold 602 of the shares for proceeds of approximately $380,000.

41.     On or about March 17, 2006, the National Association of Securities Dealers ("NASD") initiated an investigation of Bedrock Securities concerning, among other things, the sale of defendant LORETTA FREDY BUSH's Xinhua Finance shares.

42.     At defendant SHELLY S. SINGHAL's direction, Nominee C, on behalf of Bedford, entered into backdated agreements with defendant LORETTA FREDY BUSH concerning the shares transferred by LORETTA FREDY BUSH to Bedrock Securities.  The

agreements were created to give the false appearance that LORETTA FREDY BUSH had not

sold any of her Xinhua Finance shares and that she had merely pledged the shares to Bedford for

purposes of securing a loan.  Bedford's operations consisted of receiving shares belonging to

LORETTA FREDY BUSH, selling those shares at SHELLY S. SINGHAL's direction, and

distributing the proceeds for the primary benefit of LORETTA FREDY BUSH.  SHELLY S.

SINGHAL controlled and used Nominee C and Bedford as nominees to disguise the involvement

of SHELLY S. SINGHAL in the sale of LORETTA FREDY BUSH's Xinhua Finance shares to

avoid the obligation of Xinhua Finance to disclose publicly a related party transaction and to

engage in undisclosed insider trading.

43.    Despite language in the agreements between Bedford and defendant LORETTA

FREDY BUSH that Bedrock Securities and Bedford would not sell her Xinhua Finance shares,

LORETTA FREDY BUSH knew about and directed the trading of her Xinhua Finance shares.

LORETTA FREDY BUSH used the agreements with Bedford to conceal and disguise the sale of

her Xinhua Finance shares for purposes of, among other things, avoiding the obligation of

Xinhua Finance to disclose publicly a related party transaction and engaging in undisclosed

insider trading.

44.    On or about April 25, 2006, at defendant SHELLY S. SINGHAL's direction,

Bedrock Securities transferred 3,634 Xinhua Finance shares owned by defendant LORETTA

FREDY BUSH to an account in the name of Bedford.  From on or about April 26, 2006 through

on or about August 21, 2006, at SHELLY S. SINGHAL's direction, Bedford sold the 3,634

shares for proceeds of approximately $2,400,000.  From on or about July 14, 2006 through on or

12

about August 30, 2006, at SHELLY S. SINGHAL's direction, Bedford wired approximately $2,500,000 to accounts for the benefit of LORETTA FREDY BUSH.

45.     On or about May 10, 2006, defendant DENNIS L. PELINO transferred 3,939 Xinhua Finance shares owned by him to Bedford.  From on or about April 26, 2006 through on or about August 22, 2006, at defendant SHELLY S. SINGHAL'S direction, Bedford sold 3,914 Xinhua Finance shares allocated to DENNIS L. PELINO for proceeds of approximately $2,500,000.  From on or about June 5, 2006 through on or about August 24, 2006, Bedford wired approximately $2,300,000 from the proceeds of the sale of his Xinhua Finance shares to accounts for the benefit of DENNIS L. PELINO.  DENNIS L. PELINO used Bedford to conceal and disguise the sale of his Xinhua Finance shares for purposes of, among other things, avoiding the obligation of Xinhua Finance to disclose publicly a related party transaction and engaging in undisclosed insider trading.

46.     From on or about September 8, 2006 through on or about January 29, 2007, defendant LORETTA FREDY BUSH transferred 10,000 Xinhua Finance shares beneficially owned by her to Bedford.  From on or about September 26, 2006 through on or about May 21, 2008, at defendant SHELLY S. SINGHAL's direction, Bedford sold the 10,000 Xinhua Finance shares for proceeds of approximately $5,200,000.  From on or about November 10, 2006 through on or about June 11, 2007, Bedford wired approximately $4,200,000 from the proceeds of the sale of her Xinhua Finance shares to an account in China for the benefit of LORETTA FREDY BUSH.

47.     From on or about January 13, 2006 through on or about May 21, 2008, at defendant SHELLY S. SINGHAL's direction, Bedrock Securities and Bedford sold Xinhua

Finance shares belonging to the following individuals resulting in proceeds of the following approximate amounts:

| LORETTA FREDY BUSH | $23,200,000 |
| DENNIS L. PELINO | $2,500,000 |

48.     As a result of the Bedrock Securities and Bedford transactions, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish statements to the SEC that misrepresented and failed to disclose (a) a related party transaction between Xinhua Finance, its CEO (LORETTA FREDY BUSH), and members of its Board of Directors (SHELLY S. SINGHAL and DENNIS L. PELINO) concerning the sale of Xinhua Finance shares belonging to LORETTA FREDY BUSH and DENNIS L. PELINO, and (b) the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH and DENNIS L. PELINO.

**The Wiremill and Hyperion Transactions**

49.     Xinhua Finance entered into agreements with Wire Mill Partners II and Wiremill in which Xinhua Finance agreed to pay commissions to Wire Mill Partners II and Wiremill in return for introducing certain transactions to Xinhua Finance.  The transactions introduced by Wire Mill Partners II and Wiremill to Xinhua Finance included the receipt by Xinhua Finance of securities assets in consideration for Xinhua Finance providing business development services in China for various publically traded companies listed in the United States.  In the short-term, the securities assets received by Xinhua Finance from the various publically traded companies listed in the United States positively affected Xinhua Finance's balance sheet.

50.     Defendant SHELLY S. SINGHAL controlled and used Wire Mill Partners II and Wiremill as nominees to disguise the interest and involvement of SHELLY S. SINGHAL in the activities of Wire Mill Partners II and Wiremill for purposes of, among other things, avoiding the obligation of Xinhua Finance to disclose publicly a related party transaction.

51.     On or about April 1, 2005, Xinhua Finance credited $3,611,111 to Wire Mill Partners II in return for transactions purportedly introduced by Wire Mill Partners II.  Defendant SHELLY S. SINGHAL directed Wire Mill Partners II to apply the $3,611,111 to the exercise price for the warrant held by Entree Capital for the benefit of defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO.

52.     On or about February 3, 2006, Xinhua Finance paid $1,368,463.42 to Wiremill in return for transactions purportedly introduced by Wiremill.  On or about February 16, 2006, at defendant SHELLY S. SINGHAL's direction, Wiremill wired $1,290,671.39 to SBI Advisors.

53.     On or about May 23, 2006, Xinhua Finance paid $1,050,000 to Wire Mill Partners II in return for transactions purportedly introduced by Wiremill.  On or about June 8, 2006, at defendant SHELLY S. SINGHAL's direction, Wire Mill Partners II wired $1,050,000 to Wiremill.  On or about June 13, 2006, at SHELLY S. SINGHAL's direction, Wiremill wired $1,000,000 to an account in Austria that was associated with Company G.  On or about June 16, 2006, the account in Austria wired $1,000,000 to an account in China for the benefit of defendant LORETTA FREDY BUSH.

54.     On or about December 15, 2006, Xinhua Finance paid $1,883,197.50 to Wiremill in return for transactions purportedly introduced by Wiremill.  On or about December 18, 2006, at defendant SHELLY S. SINGHAL's direction, Wiremill wired $683,117 to an account under

the control of SHELLY S. SINGHAL.  On or about December 29, 2006, at SHELLY S. SINGHAL's direction, Wiremill wired $800,000 to an account in the name of Tamarack Partners.  On or about January 5, 2007, at SHELLY S. SINGHAL's direction, Tamarack Partners wired $800,000 to an account in China for the benefit of defendant LORETTA FREDY BUSH.

55.     From on or about April 1, 2006 through on or about January 5, 2007, at defendant SHELLY S. SINGHAL's direction, Wire Mill Partners II and Wiremill credited and distributed funds in the following approximate amounts directly and indirectly for the benefit of the following individuals:

| SHELLY S. SINGHAL/SBI USA | $5,500,000 |
| LORETTA FREDY BUSH | $1,800,000 |

56.     In or around the end of calendar years 2005 and 2006, the securities assets received by Xinhua Finance via Wire Mill Partners II and Wiremill in consideration for Xinhua Finance providing business development services in China for various publically traded companies listed in the United States posed a negative risk to Xinhua Finance's balance sheet if the securities assets had declined in value.  To minimize the potential impact to Xinhua Finance's balance sheet posed by those securities assets and other assets on Xinhua Finance's balance sheet declining in value, Xinhua Finance sold certain of the assets to Hyperion. Defendant SHELLY S. SINGHAL controlled and used Hyperion as a nominee to purchase the assets to disguise the interest and involvement of SHELLY S. SINGHAL in the activities of Hyperion for purposes of, among other things, avoiding the obligation of Xinhua Finance to disclose a related party transaction.

57.     As a result of the Wiremill and Hyperion transactions, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish statements to the SEC that misrepresented and failed to disclose a related party transaction between Xinhua Finance, its CEO (LORETTA FREDY BUSH), and members of its Board of Directors (SHELLY S. SINGHAL and DENNIS L. PELINO) concerning the payment of monies from Xinhua Finance to Wire Mill Partners II and Wiremill and the sale of assets from Xinhua Finance to Hyperion.

## COUNT ONE
### Conspiracy to Commit Mail Fraud and False Statements
### (18 U.S.C. § 371)

58.     Paragraphs 1 through 57 of the General Allegation section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

59.     From in or about January 2004 through in or about January 2009, the exact dates being unknown to the Grand Jury, in the District of Columbia and elsewhere, the defendants,

**SHELLY S. SINGHAL**

**LORETTA FREDY BUSH**

**DENNIS L. PELINO**

and others, both known and unknown to the Grand Jury, unlawfully, willfully and knowingly combined, conspired, confederated and agreed with one another and with others to commit offenses against the United States, that is

a.      to knowingly and with intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing they were false and fraudulent when made, for

the purpose of executing such scheme and artifice and attempting so to do, did knowingly cause

to be sent, delivered and moved by the United States Postal Service and private and commercial

interstate carrier reports and other filings of Xinhua Finance, in violation of Title 18, United

States Code, Section 1341; and

b.      in a matter within the jurisdiction of the executive branch of the Government of

the United States, to wit, the United States Securities and Exchange Commission, knowingly and

willfully falsified, concealed, and covered up by trick, scheme, and device a material fact, made

materially false, fictitious, and fraudulent statements and representations, and made use of false

writings and documents knowing the same to contain materially false, fictitious and fraudulent

statements and entries, in violation of Title 18, United States Code, Section 1001.

## GOAL OF THE CONSPIRACY

60.      It was a goal of the conspiracy that defendants SHELLY S. SINGHAL,

LORETTA FREDY BUSH, DENNIS L. PELINO and others would and did enrich themselves

through a series of undisclosed and disguised related party transactions and insider trading of

Xinhua Finance shares.

## MANNER AND MEANS OF THE CONSPIRACY

61.      Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH, DENNIS L.

PELINO and others used the following manner and means, among others, to accomplish the

objects and goal of the conspiracy:

a.      Defendant SHELLY S. SINGHAL established nominee entities to

disguise and conceal the involvement of defendants SHELLY S. SINGHAL, LORETTA

FREDY BUSH and DENNIS L. PELINO in transactions with Xinhua Finance.

b.      Defendant SHELLY S. SINGHAL misrepresented and concealed from the SEC, investors and others his control over the nominee entities.

c.      Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO used the nominee entities to obtain cash, warrants, stock and other things of value from Xinhua Finance and to engage in insider trading.

d.       Defendants SHELLY S. SINGHAL and LORETTA FREDY BUSH used the nominee entities to conceal and disguise the sale of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH.

e.      Defendants SHELLY S. SINGHAL and DENNIS L. PELINO used the nominee entities to conceal and disguise the sale of Xinhua Finance shares owned directly and beneficially by DENNIS L. PELINO.

f.      Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO used the nominee entities to transfer assets off of Xinhua Finance's balance sheet to minimize potentially negative impacts to the balance sheet of Xinhua Finance.

g.      Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish statements to the SEC, investors and others that misrepresented and omitted related party transactions.

h.      Defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish statements to the SEC, investors and others that misrepresented the number of shares owned directly and beneficially by LORETTA FREDY BUSH and DENNIS L. PELINO.

## OVERT ACTS

62.     In furtherance of the conspiracy and to accomplish the objects thereof, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH, DENNIS L. PELINO and their co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

### The Entree Capital Transaction

a.     On or about January 15, 2004, defendant SHELLY S. SINGHAL sent an email to the owner of Company H, asking if the CEO approved of the language in the document attached to the email.  The attachment was a draft assignment and assumption agreement transferring Company H's rights to purchase Xinhua Finance shares to Brightline Capital for $500,000.

b.     On or about January 16, 2004, defendant SHELLY S. SINGHAL sent an email to defendants LORETTA FREDY BUSH and DENNIS L. PELINO, asking LORETTA FREDY BUSH to review a change suggested by the owner of Company H to the draft assignment and assumption agreement.  In her response to SHELLY S. SINGHAL, LORETTA FREDY BUSH stated, "Fine with me."

c.     On or about January 19, 2004, defendant DENNIS L. PELINO sent an email to defendant SHELLY S. SINGHAL asking to have a call that day to discuss, among other things, getting the shares from the owner of Company H under control of "Briteline" [sic].

d.     On or about January 20, 2004, Brightline Capital and Company H executed an assignment and assumption agreement transferring from Company H to Brightline Capital the warrant to purchase Xinhua Finance stock in exchange for $500,000.

e. On or about April 20, 2004, defendant SHELLY S. SINGHAL caused a certificate of amendment to be filed with the State of Delaware amending the name of SBI Brightline Capital to Entree Capital.

f. On or about October 7, 2004, defendant SHELLY S. SINGHAL sent an email stating that Entree Capital was controlled by three entities: Manchester Capital, LLC (47.5%); The Orchard Lake Group LLC (47.5%); and COSMAB LLC (5%).

g. On or about October 7, 2004, defendant SHELLY S. SINGHAL sent an email to defendant DENNIS L. PELINO, asking who the contact person for Manchester Capital should be. DENNIS L. PELINO provided a name as the contact person.

h. On or about January 19, 2005, defendant SHELLY S. SINGHAL sent an email to Xinhua Finance's Chief Financial Officer ("CFO") stating, "[a]s always, I'm very happy to work on behalf of [Xinhua Finance] and its shareholders, and in thinking about what is fair, I believe that the Entree Capital warrants should be repriced [*i.e.*, lowered from $0.36 per share] to 10 cents." SHELLY S. SINGHAL forwarded the email to defendant DENNIS L. PELINO. On or about January 20, 2005, DENNIS L. PELINO sent an email to SHELLY S. SINGHAL stating, "[w]e told [the CFO] to make this happen for you, should be done this week. Pls follow up with [the CFO] and don't let him up until we get it done."

i. On or about March 22, 2005, defendant SHELLY S. SINGHAL sent an email to the CFO of Xinhua Finance stating, "[t]he people at Entree have asked me to look into their warrant." Specifically, SHELLY S. SINGHAL inquired whether there was a signed, lock-up agreement for the warrant. The CFO forwarded the email to Xinhua Finance's General Counsel.

j.      On or about March 23, 2005, Xinhua Finance's General Counsel responded to defendant SHELLY S. SINGHAL that Entree Capital was precluded from selling shares prior to April 24, 2005 pursuant to the lock-up provision of the warrant agreements.

k.      On or about March 23, 2005, defendant SHELLY S. SINGHAL forwarded the email chain regarding the lock-up provision to defendant DENNIS L. PELINO, who responded to the email by stating, "Shelly, I will go to Fredy with this.  Seems that if she gave her consent as 'The Company' you could get this done through a block trade prior to the lock up release."

l.      On or about March 23, 2005, defendant DENNIS L. PELINO forwarded to defendant LORETTA FREDY BUSH the email response of DENNIS L. PELINO to defendant SHELLY S. SINGHAL, also dated March 23, 2005, and stated the following: "It seems to me that it would be in the best interest of [Xinhua Finance] to allow Shelly to move on his shares 'before' the lock up period is over thus taking pressure off of the selling volume at that time. . . . My suggestion is that you get Shelly into a block sale for 75% of Entree's shares now which will be helpful going forward come April 24th."

m.      On or about March 25, 2005, defendant LORETTA FREDY BUSH sent an email to the CFO and the General Counsel of Xinhua Finance stating, "[t]he company will agree to allow Entree to exercise their warrant."

n.      On or about March 25, 2005, Entree Capital's lock-up period was accelerated from April 24, 2005 to on or about April 7, 2005.

o.      On or about March 28, 2005, defendant SHELLY S. SINGHAL paid a portion of the exercise price for the warrant held by Entree Capital by causing the transfer of

$388,888 from a bank account in the name of SBI USA and $1,000,000 from a bank account in

the name of SHELLY S. SINGHAL to Xinhua Finance.

p.      On or about April 1, 2005, at defendant SHELLY S. SINGHAL's

direction, Robert S. Brown signed a letter on behalf of Wire Mill Partners II referencing an April

5, 2004 agreement between Xinhua Finance and Wire Mill Partners II.  This agreement required

Xinhua Finance to pay a finder's fee for certain transactions introduced by Wire Mill Partners II.

In the April 1, 2005 letter, Robert S. Brown stated that Wire Mill Partners II was entitled to

approximately $2,000,000 in fees for transactions that had already been consummated, and he

proposed that in exchange for a payment of $3,611,111 from Xinhua Finance, Wire Mill Partners

II would commit to provide to Xinhua Finance transactions with consideration of at least

$10,000,000.

q.      On or about April 1, 2005, at defendant SHELLY S. SINGHAL's

direction, Robert S. Brown sent a second letter on behalf of Wire Mill Partners II, authorizing

Xinhua Finance either to pay the $3,611,111 amount directly to Entree Capital or to disburse the

$3,611,111 at Entree Capital's direction.

r.      On or about April 21, 2005, Businessperson B-2 sent an email to

defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO

related to Entree Capital.  This email was sent to LORETTA FREDY BUSH's Xinhua Finance

email account.  DENNIS L. PELINO responded to the email by stating, in an email to SHELLY

S. SINGHAL and Businessperson B-2, "we have to be very careful about using Entree [sic]

name when communicating with [Xinhua Finance] on private investments.  We are going to have

to explain this."  SHELLY S. SINGHAL sent an email the same day to Businessperson B-2

stating, "[i]n the future, please communicate with Fredy only on her [non-Xinhua Finance] email address."

s.　　On or about April 29, 2005, defendant DENNIS L. PELINO sent an email to defendant SHELLY S. SINGHAL directing SHELLY S. SINGHAL to retain certain funds intended for the benefit of DENNIS L. PELINO from the sale of Entree Capital's Xinhua Finance shares in an account at SBI USA, which came to be known among certain SBI USA employees as the DENNIS L. PELINO "slush fund," to pay the salaries of DENNIS L. PELINO's administrative assistant and one of his close family members as well as personal expenses of DENNIS L. PELINO.

t.　　On or about July 13, 2005, Businessperson B-2 sent an email to defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO with the subject "entree update" and attached an updated trading summary.  On or about July 15, 2005, DENNIS L. PELINO responded to the email with a copy to SHELLY S. SINGHAL, LORETTA FREDY BUSH and Businessperson B-2 requesting, among other things, that Businessperson B-2 "show a break in the trades from where you completed the last round of trades that were then distributed through the loans from Entree."

u.　　On or about July 26, 2005, Xinhua Finance issued a global press release announcing that Xinhua Finance had established a sponsored Level 1 ADR facility.  Defendant LORETTA FREDY BUSH was quoted in the article stating, among other things, "our ADR program will provide the opportunity for a wider range of US investors to participate in Xinhua Finance's development."

24

**The Bedrock Securities and Bedford Transactions**

v.      On or about January 4, 2006, defendant LORETTA FREDY BUSH directed the transfer of 22,500 Xinhua Finance shares to an account at Financial Institution A in New York, New York in the name of Bedrock Securities and controlled by defendant SHELLY S. SINGHAL.

w.      On or about January 10, 2006, defendant SHELLY S. SINGHAL caused Bedrock Securities, with defendant LORETTA FREDY BUSH's consent, to begin to sell LORETTA FREDY BUSH's Xinhua Finance shares.  The 22,500 shares were sold by February 23, 2006 realizing net proceeds of approximately $15,300,000.

x.      On or about January 12, 2006, a representative from Financial Institution A questioned the sales from the Bedrock Securities account, reminding defendant SHELLY S. SINGHAL in an email that sales by members of Xinhua Finance's Board of Directors needed to be disclosed.  SHELLY S. SINGHAL responded to the email by stating, "We are not selling Fredy's shares.  Nor are we selling the shares of any member of the board."

y.      To disguise and conceal the sale of defendant LORETTA FREDY BUSH's shares, defendant SHELLY S. SINGHAL caused backdated agreements to be created between defendant LORETTA FREDY BUSH and Bedford.  These agreements falsely made it appear that LORETTA FREDY BUSH had pledged the shares to Bedford in exchange for a loan.

z.      On or about January 11, 2006, defendant SHELLY S. SINGHAL sent an email to Businessperson B-2 concerning a sale by Bedford of $5,000,000 of Xinhua Finance shares to an investor in the District of Columbia.

aa.     On or about January 16, 2006, defendant LORETTA FREDY BUSH sent an email to Businessperson B-2 and the investor in the District of Columbia concerning a potential purchase of Xinhua Finance shares by the investor.

bb.     On or about January 16, 2006, at the direction of defendants SHELLY S. SINGHAL and LORETTA FREDY BUSH, Businessperson B-2 sent an email to the investor in Washington, D.C. concerning a potential sale of Xinhua Finance shares by Bedford to the investor.

cc.     On or about January 16, 2006, Businessperson B-2 sent an email to defendant LORETTA FREDY BUSH at her Xinhua Finance email address and defendant SHELLY S. SINGHAL confirming that Businessperson B-2 had talked to the investor in the District of Columbia and needed to confirm the details with LORETTA FREDY BUSH before proceeding.

dd.     On or about January 16, 2006, defendant SHELLY S. SINGHAL sent an email to Businessperson B-2 concerning the sale by Bedford of Xinhua Finance shares to the investor in the District of Columbia stating, among other things, "[w]e need to make sure we don't raise any eyebrows at the exchange with this trade" and "please don't use Fredy's Xinhua email address to discuss this."

ee.     On or about January 18, 2006, defendant SHELLY S. SINGHAL sent an email to the investor in the District of Columbia concerning the sale by Bedford of Xinhua Finance shares stating, among other things, that SHELLY S. SINGHAL was offering the shares to the investor "as a personal favor to Fredy."

ff.     On or about January 26, 2006, defendant SHELLY S. SINGHAL sent an email to the investor in the District of Columbia and defendant LORETTA FREDY BUSH concerning the sale by Bedford of Xinhua Finance shares stating, among other things, the investor had "declined the trade and my seller has no further obligation to you."

gg.     On or about October 26, 2006, defendant SHELLY S. SINGHAL testified before the NASD in Los Angeles, California concerning, among other things, the trading of defendant LORETTA FREDY BUSH's Xinhua Finance shares by Bedford.  SHELLY S. SINGHAL provided false and misleading testimony to the NASD concerning, among other things, that Bedford provided him with directions on the trading of LORETTA FREDY BUSH's shares and that he talked to Nominee C "almost daily" concerning the trading of LORETTA FREDY BUSH's shares when, in fact, he knew that he provided the trading directions to Bedford and that Nominee C was unaware that Bedrock Securities had sold 22,500 of LORETTA FREDY BUSH's shares.

### The Wiremill and Hyperion Transactions

hh.     On or about January 23, 2006, defendant SHELLY S. SINGHAL caused Robert S. Brown to file formation papers with the State of Delaware to form Wiremill.

ii.     On or about January 25, 2006, defendant SHELLY S. SINGHAL sent an email to Robert S. Brown stating, "[i]f you would like to receive an additional $30 grand, I would ask that you get a wire mill [sic] bank account opened so we can send in some dough."

jj.     On or about February 3, 2006, Xinhua Finance wired $1,368,463.42 to a bank account in the name of Wiremill.

kk.     On or about February 14, 2006, Xinhua Finance announced publicly that it had issued a warrant to Hyperion and falsely identified Hyperion as "a third party independent company."

ll.     On or about February 14, 2006, SBI Advisors invoiced Wiremill $1,290,671.39 for "Consulting Services," even though SBI Advisors provided no services to Wiremill.

mm.     On or about February 16, 2006, at defendant SHELLY S. SINGHAL's direction, Wiremill wired $1,290,671.39 to SBI Advisors.

nn.     On or about February 22, 2006, defendant SHELLY S. SINGHAL caused SBI Advisors to wire $1,029,600 to SBI USA.

oo.     On or about February 22, 2006, defendant SHELLY S. SINGHAL caused SBI USA to wire $1,029,600 to Xinhua Finance in return for which SBI USA received 3,900 Xinhua Finance shares.

pp.     On or about May 17, 2006, defendant SHELLY S. SINGHAL sent an email to Businessperson B-2 stating that "Wiremill" was going to be wired $1,100,000 on May 22, 2006 and that $1,000,000 of that amount should be sent to "Fredy."

qq.     On or about May 23, 2006, Xinhua Finance wired $1,050,000 to Wire Mill Partners II.

rr.     On or about June 7, 2006, in New York, New York, defendant LORETTA FREDY BUSH executed an agreement, dated June 1, 2006, between LORETTA FREDY BUSH and Company G, calling for Company G to pay LORETTA FREDY BUSH $1,000,000 to

perform consulting services to expand Company G's business in China and the Special

Administrative Region of Hong Kong.

ss.      At defendant SHELLY S. SINGHAL's direction, Robert S. Brown

executed an agreement on behalf of Wiremill between Wiremill and Company G, also dated June

1, 2006, calling for Wiremill to pay Company G $1,000,0000 to perform consulting services to

expand Company G's business in China and the Special Administrative Region of Hong Kong,

*i.e.*, the exact same consulting services that defendant LORETTA FREDY BUSH was supposed

to provide to Company G.

tt.      On or about June 8, 2006, at defendant SHELLY S. SINGHAL's

direction, Wire Mill Partners II wired $1,050,000 to Wiremill.  On or about June 13, 2006, at

defendant SHELLY S. SINGHAL's direction, Wiremill wired $1,000,000 to an account in

Austria associated with Company G.

uu.      On or about June 16, 2006, Company G wired $1,000,000 to an account in

China for the benefit of defendant LORETTA FREDY BUSH.

vv.      On or about December 11, 2006, defendant LORETTA FREDY BUSH

authorized Xinhua Finance to pay approximately $1,800,000 to Wiremill.

ww.      On or about December 14, 2006, defendant SHELLY S. SINGHAL

caused Tamarack Partners to be formed in the State of Delaware.

xx.      On or about December 15, 2006, Xinhua Finance wired $1,883,197.50 to

Wiremill.

yy.      On or about December 18, 2006, at defendant SHELLY S. SINGHAL's

direction, Wiremill wired $683,117 to an account controlled by SHELLY S. SINGHAL.

zz.     On or about December 29, 2006, at defendant SHELLY S. SINGHAL's direction, Wiremill wired $800,000 to Tamarack Partners purportedly to pay for a consulting fee, even though Tamarack Partners had provided no services to Wiremill.

aaa.     On or about January 5, 2007, at defendant SHELLY S. SINGHAL's direction, Tamarack Partners wired $800,000 to an account in China for the benefit of defendant LORETTA FREDY BUSH.

### Securities Filings by Xinhua Finance

bbb.     On or about May 20, 2005, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance's counsel to furnish to the SEC in Washington, D.C. the Report and Financial Statements of Xinhua Finance for the year ended December 31, 2004, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading statements, including without limitation concerning "a warrant holder [that] exercised its rights to subscribe for 6,944 ordinary shares."

ccc.     On or about June 30, 2005, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance's counsel to furnish to the SEC in Washington, D.C. the Securities Report of Xinhua Finance for the time period January 5, 2004 to December 31, 2004, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading statements, including without limitation that Xinhua Finance "does not have any related party transactions."

ddd.    On or about October 14, 2005, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance's counsel to furnish to the SEC in Washington, D.C. the Semi-Annual Report of Xinhua Finance for the time period January 1, 2005 to June 30, 2005, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading statements, including without limitation concerning the "[e]xercise of warrants by a warrant-holder" for 6,944 shares.

eee.    On or about September 1, 2006, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish to the SEC in Washington, D.C. the Annual Securities Report of Xinhua Finance for the period from January 1, 2005 to December 31, 2005, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading information, including without limitation information concerning related party transactions and the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH and DENNIS L. PELINO.

fff.    On or about January 19, 2007, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance's counsel to furnish to the SEC in Washington, D.C. the Semi-Annual Report of Xinhua Finance for the time period January 1, 2006 to June 30, 2006, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading information, including without limitation the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH.

ggg.    On or about July 11, 2007, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish to the SEC in Washington, D.C. the Annual Securities Report of Xinhua Finance for the period from January 1, 2006 to December 31, 2006, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading information, including without limitation information concerning related party transactions and the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH and DENNIS L. PELINO.

hhh.    On or about December 7, 2007, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO caused Xinhua Finance to furnish to the SEC in Washington, D.C. the Semi-Annual Securities Report of Xinhua Finance for the period from January 1, 2007 to June 30, 2007, which Xinhua Finance had previously filed with the Tokyo Stock Exchange and the Director of the Kanto Local Finance Bureau.  The Report provided false and misleading information, including without limitation concerning the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH.

**(Conspiracy, in violation of Title 18, United States Code, Section 371.)**

**COUNT TWO THROUGH FIVE**
**Mail Fraud**
**(18 U.S.C. §§ 2 and 1341)**

63.      Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and

incorporated by reference as if fully set forth herein.

64.      From in or around January 2004 through in or around January 2009, defendants

SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO engaged in a

scheme (a) to obtain things of value from Xinhua Finance to misrepresent and avoid disclosing

transactions as related party transactions in reports furnished to the SEC and investors; (b) to sell

Xinhua Finance shares to misrepresent and avoid disclosing the sale of shares in reports

furnished to the SEC and investors; and (c) to manipulate Xinhua Finance's balance sheet to

avoid potentially negative impairment charges.  These material misrepresentations and omissions

appeared in the following mailings to the SEC in Washington, D.C.:

| COUNT | ON OR ABOUT DATE | XINHUA FINANCE MAILING TO THE SEC |
|---|---|---|
| **TWO** | 9/1/2006 | Annual Securities Report for year ended December 31, 2005 |
| **THREE** | 1/19/2007 | Semi-Annual Report for January 1, 2006 to June 30, 2006 |
| **FOUR** | 7/11/2007 | Annual Securities Report for year ended December 31 2006 |
| **FIVE** | 12/7/2007 | Semi-Annual Report for January 1, 2007 to June 30, 2007 |

**(Mail Fraud, in violation of Title 18, United States Code, Sections 2 and 1341.)**

33

## COUNT SIX
### False Statement
### (18 U.S.C. §§ 2 and 1001)

65.     Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

66.     On or about September 1, 2006, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO, in a matter within the jurisdiction of a department and agency of the United States, to wit, the United States Securities and Exchange Commission, did knowingly and willfully falsify, conceal and cover up by a trick, scheme, and device a material fact, made materially false, fictitious, and fraudulent statements and representations, and made and used false writings and documents knowing the same to contain materially false, fictitious and fraudulent statements and entries by causing Xinhua Finance to submit an Annual Securities Report of Xinhua Finance, for the period from January 1, 2005 to December 31, 2005, to the SEC in Washington, D.C., which contained false and misleading information concerning related party transactions and the number of Xinhua Finance shares owned directly and beneficially by LORETTA FREDY BUSH and DENNIS L. PELINO.

**(False Statements, in violation of Title 18, United States Code, Sections 2 and 1001.)**

### COUNT SEVEN
### False Statement
### (18 U.S.C. §§ 2 and 1001)

67.     Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

68.     On or about January 19, 2007, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO, in a matter within the jurisdiction of a department and

agency of the United States, to wit, the United States Securities and Exchange Commission, did

knowingly and willfully falsify, conceal and cover up by a trick, scheme, and device a material

fact, made materially false, fictitious, and fraudulent statements and representations, and made

and used false writings and documents knowing the same to contain materially false, fictitious

and fraudulent statements and entries by causing Xinhua Finance to submit a Semi-Annual

Securities Report of Xinhua Finance, for the period from January 1, 2006 to June 30, 2006, to the

SEC in Washington, D.C., which contained false and misleading information concerning the

number of Xinhua Finance shares owned directly and indirectly by LORETTA FREDY BUSH.

**(False Statements, in violation of Title 18, United States Code, Sections 2 and 1001.)**

### COUNT EIGHT
### False Statement
### (18 U.S.C. §§ 2 and 1001)

69.     Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and

incorporated by reference as if fully set forth herein.

70.     On or about July 11, 2007, defendants SHELLY S. SINGHAL, LORETTA

FREDY BUSH and DENNIS L. PELINO, in a matter within the jurisdiction of a department and

agency of the United States, to wit, the United States Securities and Exchange Commission, did

knowingly and willfully falsify, conceal and cover up by a trick, scheme, and device a material

fact, made materially false, fictitious, and fraudulent statements and representations, and made

and used false writings and documents knowing the same to contain materially false, fictitious

and fraudulent statements and entries by causing Xinhua Finance to submit an Annual Securities

Report of Xinhua Finance, for the period from January 1, 2006 to December 31, 2006, to the

SEC in Washington, D.C., which contained false and misleading information concerning related

party transactions and the number of Xinhua Finance shares owned directly and indirectly by
LORETTA FREDY BUSH and DENNIS L. PELINO.

**(False Statements, in violation of Title 18, United States Code, Sections 2 and 1001.)**

### COUNT NINE
### False Statement
### (18 U.S.C. §§ 2 and 1001)

71.     Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and
incorporated by reference as if fully set forth herein.

72.     On or about December 7, 2007, defendants SHELLY S. SINGHAL, LORETTA
FREDY BUSH and DENNIS L. PELINO, in a matter within the jurisdiction of a department and
agency of the United States, to wit, the United States Securities and Exchange Commission, did
knowingly and willfully falsify, conceal and cover up by a trick, scheme, and device a material
fact, made materially false, fictitious, and fraudulent statements and representations, and made
and used false writings and documents knowing the same to contain materially false, fictitious
and fraudulent statements and entries by causing Xinhua Finance to submit a Semi-Annual
Securities Report of Xinhua Finance, for the period from January 1, 2007 to June 30, 2007, to the
SEC in Washington, D.C., which contained false and misleading information concerning the
number of Xinhua Finance shares owned directly and indirectly by LORETTA FREDY BUSH.

**(False Statements, in violation of Title 18, United States Code, Sections 2 and 1001.)**

## COUNT TEN
### False Statement
### (18 U.S.C. § 1001)

73.     Paragraphs 1 through 57, 61 and 62 of this Indictment are realleged and incorporated by reference as if fully set forth herein.

74.     On or about November 15, 2008, in the District of Columbia, defendant DENNIS L. PELINO, in a matter within the jurisdiction of a department and agency of the United States, to wit, the Federal Bureau of Investigation, did knowingly and willfully falsify, conceal and cover up by a trick, scheme, and device a material fact and made materially false, fictitious, and fraudulent statements and representations, by falsely representing to an agent from the Federal Bureau of Investigation that he had no idea where Entree Capital obtained the funds to pay to him when, in truth and fact, as he then and there well knew, defendant SHELLY S. SINGHAL had sold Xinhua Finance shares through Entree Capital and distributed proceeds from the sale of those shares to DENNIS L. PELINO.

**(False Statement, in violation of Title 18, United States Code, Section 1001.)**

### CRIMINAL FORFEITURE ALLEGATION

75.     The violations alleged in Count One through Count Five of this Indictment are re-alleged as though set forth fully herein and incorporated by reference for the purpose of alleging forfeiture to the United States of America pursuant to the provisions of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

76.     As a result of the offenses alleged in Count One through Count Five of this Indictment, defendants SHELLY S. SINGHAL, LORETTA FREDY BUSH and DENNIS L. PELINO shall forfeit to the United States any and all property, real or personal, constituting, or

derived from, proceeds obtained directly or indirectly, as the result of a conspiracy, in violation

of Title 18, United States Code, Section 371, and a mail fraud scheme, in violation of Title 18,

United States Code, Section 1341.  The property to be forfeited includes, but is not limited to:

<u>Money Judgment</u>:

a sum of money of at least $50,000,000, which represents a sum of money equal to property constituting, or derived from, proceeds obtained, directly or indirectly, as the result of the offenses alleged in Count One through Count Five of this Indictment.

By virtue of the commission of the felony offenses charged in Counts One through Five of this

Indictment, any and all interest that the defendants SHELLY S. SINGHAL, LORETTA FREDY

BUSH and DENNIS L. PELINO have in the above-described property is vested in the United

States and hereby forfeited to the United States pursuant to Title 28, United States Code, Section

2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

77.     If, as a result of any act or omission of the defendants, the property identified

above:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be subdivided without difficulty

it is the intention of the United States, pursuant to Title 18, United States Code, Section

982(b)(1), incorporating by reference Title 21, United States Code, Section 853(p), to seek

forfeiture of any other property of said defendants up to the value of said property listed above as

being subject to forfeiture.

**(Criminal Forfeiture, in violation of Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C))**

A TRUE BILL:


FOREPERSON



ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA


_____